UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LALTITUDE, LLC,**

    **Plaintiff,**

v.

**DREAMBUILDER TOY, LLC,** *et al.*,

    **Defendants.**

Case No. 2:22-cv-2911
Judge Edmund A. Sargus, Jr.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Defendant Dreambuilder Toy, LLC's Motion to Enforce Settlement Agreement and for Sanctions (Mot., ECF No. 26) and on Plaintiff Laltitude, LLC's Motion to Dismiss With Prejudice (ECF No. 37). For the reasons stated in this Opinion and Order, the Court **GRANTS** Dreambuilder's Motion to Enforce Settlement Agreement and for Sanctions. (ECF No. 26.) The Court **DENIES** Laltitude's Motion to Dismiss (ECF No. 37) and **ORDERS** the Parties to confer in accordance with this Opinion and Order.

Ultimately, the Court finds no genuine issue of material fact that Dreambuilder and Laltitude reached an enforceable settlement agreement on June 21, 2023, when Dreambuilder accepted the terms of a proposed settlement offer sent to it by Laltitude over email. The Court also finds that Laltitude breached that agreement and that sanctions are appropriate.

## BACKGROUND

In this patent infringement case, Dreambuilder claims that it reached an enforceable settlement agreement with Laltitude in June 2023 and that Laltitude subsequently breached the agreement by disavowing it and failing to follow its terms.

Laltitude is a California company that invented an ornamental design for two types of

magnetic bricks that are used as building tiles in toy sets. (Compl., ECF No. 1, ¶ 1; *see* ECF No. 27-2, PageID 233–36 (examples of the magnetic bricks used in toy sets).) Its designs are protected by United States patents. (Compl., ¶ 1.) Laltitude filed this lawsuit alleging that Dreambuilder willfully infringed on its patents by offering similar, if not identical, ornamental bricks for sale on Amazon. (*Id.*, ¶ 2.) Its claims include design patent infringement under 35 U.S.C. § 271 and unfair competition under California Business and Professions Code § 17200. (Compl.)

In a declaration filed in support of Dreambuilder's Motion, Kai Liu, owner of Dreambuilder, declares that he personally engaged in settlement discussions with Laltitude through Laltitude's Vice President, Howard Wang, from April 2023 until June 12, 2023. (Liu Decl., ECF No. 26-2, ¶¶ 1, 4; *see* Wang Decl., ECF No. 27-2, ¶ 1.) Mr. Wang declares that Dreambuilder and Laltitude "engaged in settlement talks, with the assistance of our respective counsel." (Wang Decl., ¶ 4.)

On June 12, 2023, counsel for Laltitude emailed counsel for Dreambuilder, stating "Please find the enclosed revised Settlement Agreement, which has been prepared according to the most recent discussions conducted between our clients." (ECF No. 32-1, PageID 262–63). On June 14, counsel for Dreambuilder responded, stating "We would like to propose one slight revision to this otherwise acceptable version of the agreement." (*Id.*, PageID 262.) Dreambuilder's proposed revision added one line to the definition of "COVERED PRODUCTS." (*Id.*) Counsel for Dreambuilder added, "Can you please find out if the following language will be acceptable to your client?" (*Id.*)

In response, on June 16, counsel for Laltitude stated "Please find attached to this email the latest version of the Settlement Agreement." (*Id.*, PageID 261.) Counsel identified one change to the definition of "COVERED PRODUCTS." (*Id.*, PageID 261–62.) On June 21, counsel for

Dreambuilder responded, stating "I see no problem with the revision and have forwarded it to the client for review." (*Id.*, PageID 261.) Later that same day, counsel for Dreambuilder emailed counsel for Laltitude again, stating "The proposed revision was acceptable to Dreambuilder Toy. Attached is our executed copy. Please circulate the completed document once fully executed and let me know if you need anything." (*Id.*; *see* Settlement Agreement, ECF No. 26-3.) Counsel attached a copy of the Settlement Agreement signed by Mr. Liu. (Liu Decl., ¶¶ 7–9; Settlement Agreement, PageID 170; ECF No. 32-1, PageID 261.)

Mr. Wang declares that after counsel for Laltitude sent the Settlement Agreement to counsel for Dreambuilder on June 16 but before Dreambuilder accepted the offer, he and Mr. Liu "exchanged correspondence via phone and his email" discussing it. (Wang Decl., ¶¶ 5–6.) He contends that, at some point after June 16, he and Mr. Liu agreed to amendments to the Settlement Agreement and that he informed Laltitude's counsel about agreed-upon amendments on June 25. (*Id.*, ¶ 9.) Mr. Liu denies that he had any discussions or correspondence with Mr. Wang between June 12 and June 21. (Liu Decl., ¶ 8.) Counsel for Laltitude sent an amended version of the Settlement Agreement to counsel for Dreambuilder on July 6. (*Id.*, ¶ 12.) Dreambuilder asserted that an agreement had already been reached. (*Id.*, ¶ 13.) Mr. Liu and Mr. Wang then tried to agree on amendments to the agreement, but those discussions were unsuccessful. (*Id.*, ¶ 15.)

On June 21, counsel for Dreambuilder emailed the mediator assigned to the case notifying him that the Parties had reached an agreement. (Mot., PageID 153.) The mediator indicated that he would notify the Court about the settlement unless any party objected. (*Id.*) No objection was made, and the mediator reported the case as settled. (*Id.*; Mediator's Report, ECF No. 21.)

In May 2024, Dreambuilder filed a motion to enforce the June 21, 2023, version of the Settlement Agreement that was signed by Mr. Liu and returned to counsel for Laltitude. (Mot.,

PageID 150–51.) Under the Settlement Agreement, Dreambuilder agrees to pay Laltitude $5,000 and to immediately cease and desist the manufacture and sale of certain products. (*Id.*, PageID 167.) The Parties are to file a joint motion requesting a Court-ordered permanent injunction in favor of Laltitude (a draft of which is attached to the Settlement Agreement), and Laltitude agrees file a stipulation of dismissal after the injunction is ordered. (*Id.*) Dreambuilder asks this Court to enforce the Settlement Agreement and to impose sanctions on Laltitude by awarding Dreambuilder attorneys' fees and costs incurred because of the dispute over the Settlement Agreement. (Mot., PageID 158.) Laltitude responded in opposition to the Motion. (Resp., ECF No. 27.) Dreambuilder filed a Reply. (Reply, ECF No. 32.)

In January 2025, Laltitude filed a motion to dismiss with prejudice, stating that "[t]he Parties entered into a settlement agreement attached hereto . . . to resolve all the disputes relating to the underlying patent." (ECF No. 37, PageID 295.) (ECF No. 37.) Attached to its motion, Laltitude provided a version of the Settlement Agreement signed by Dreambuilder's Kai Liu on June 21, 2023, and signed by Laltitude's Howard Wang on January 7, 2025. (ECF No. 37-1, PageID 303.) Laltitude also included a Joint Motion to the Court requesting a Court-Ordered Injunction mirroring the draft included in the Settlement Agreement but stated that Dreambuilder refuses to sign off on the Joint Motion. (ECF No. 37, PageID 295 n.1; ECF No. 37-1, PageID 305.)

Dreambuilder filed a response in opposition to Laltitude's motion to dismiss, arguing that the Court should first decide its motion to enforce the Settlement Agreement and for sanctions. (ECF No. 38.)

**LEGAL STANDARD**

Before a district court can enforce a settlement agreement, the court must determine whether an agreement has been reached on all material terms. *RE/MAX Intern., Inc. v. Realty One,*

*Inc.*, 271 F.3d 633, 645–46 (6th Cir. 2001). "The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621 (6th Cir. 1973) (citing *Massachusetts Cas. Ins. Co. v. Forman*, 469 F.2d 259, 261 (5th Cir. 1972)).

"Ordinarily, an evidentiary hearing is required where facts material to an agreement are disputed." *RE/MAX* at 646 (citing *Kukla* at 622). However, no evidentiary hearing is required, and summary enforcement may be appropriate, "where no substantial dispute exists regarding the entry into and terms of an agreement." *Id.* at 646 (citing *Kukla* at 621). In other words, a district court may summarily enforce a settlement agreement without an evidentiary hearing where the existence of a settlement agreement is "determinable solely as a matter of law." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976).

**ANALYSIS**

The Court first addresses Laltitude's motion to dismiss and the argument that the controversy is now moot. After concluding that the controversy is not moot and denying Laltitude's motion, the Court then turns to the substance of Dreambuilder's Motion. As the Court explains below, the existence of a settlement agreement between Laltitude and Dreambuilder can be determined as a matter of law, and no evidentiary hearing is required (nor did any party request one). *See Aro Corp.*, 531 F.2d at 1372. After the discussion on the existence of a settlement agreement, the Court turns to the alleged breach and Dreambuilder's motion for sanctions.

**I.      Mootness and Laltitude's Motion to Dismiss**

Laltitude moves this Court to dismiss its claims against Dreambuilder under Rule 41(a)(2) Federal Rule of Civil Procedure. (ECF No. 37.) Under that rule, "an action may be dismissed at

5

the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "Whether dismissal should be granted under the authority of Rule 41(a)(2) is within the sound discretion of the district court." *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994). "The primary purpose of the rule in interposing the requirement of court approval is to protect the nonmovant from unfair treatment." *Id.* (citing *Ikospentakis v. Thalassic S.S. Agency*, 915 F.2d 176, 177 (5th Cir.1990)). A motion for voluntary dismissal under Rule 41(a)(2) should be denied if granting it would result in "plain legal prejudice" to the defendant. *Id.*

Granting Laltitude's motion to dismiss before deciding Dreambuilder's Motion would essentially allow it to defeat Dreambuilder's motion for sanctions relating to Laltitude's refusal to acknowledge the enforceability of the Settlement Agreement from June 2023 onward. As discussed below, Dreambuilder accrued litigation costs due to Laltitude's refusal to acknowledge the enforceability of the Settlement Agreement. Accordingly, granting Laltitude's motion to dismiss now would plainly prejudice Dreambuilder in its pursuit of sanctions on Laltitude to recover damages for those additional litigation costs. As such, the controversy is not rendered moot by Laltitude's decision to sign the Settlement Agreement in January 2025.

Additionally, the Settlement Agreement, which this Court concludes below was enforceable as of June 21, 2023, requires the Parties to file a joint motion for an injunction before Laltitude files a voluntary motion to dismiss. (Settlement Agreement, PageID 167.) Thus, Laltitude's motion to dismiss is premature.

Accordingly, the Court **DENIES** Laltitude's Motion to Dismiss. (ECF No. 37.)

II. **Existence of an Enforceable Settlement Agreement**

It is uncontested that whether a settlement agreement has been reached in this case is governed by Ohio law. (*See* Mot., PageID 152; Resp., PageID 207–08); s*ee Erie R. Co. v.*

*Tompkins*, 304 U.S. 64, 78 (1938); *RE/MAX*, 271 F.3d at 646 (applying substantive Ohio law). Under Ohio law, a settlement agreement is a contract that requires an offer, acceptance, consideration, and mutual assent between parties with the legal capacity to act. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). Additionally, there must be "[a] meeting of the minds as to the essential terms of the contract." *Id.*

Consideration is not in dispute. The terms of the Settlement Agreement reflect that Dreambuilder agreed to pay a settlement fee and to cease and desist selling its blocks and that Laltitude agreed to voluntarily dismiss the claims and release Dreambuilder from liability in exchange. (Settlement Agreement, PageID 167–68.) Additionally, the Parties do not dispute that the terms of the Settlement Agreement are reasonably clear and unambiguous. *Rulli v. Fan Co.*, 683 N.E.2d 337, 339 (Ohio 1997) ("To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear.").

Dreambuilder contends that the Settlement Agreement sent to it by Laltitude on June 16 became effective on June 21 when counsel for Dreambuilder emailed the document back to counsel for Laltitude with Mr. Liu's signature in an email stating that it was accepted. (Mot., PageID 153.) Laltitude argues that the Settlement Agreement is not enforceable because (1) the Settlement Agreement did not represent a meeting of the minds on all material terms, (2) Mr. Wang did not sign it, (3) the subsequent amendments agreed to by Mr. Wang and Mr. Liu indicate that the Settlement Agreement was not final and enforceable, and (4) Dreambuilder acted in bad faith by misrepresenting the settlement to the Court without acknowledging agreed amendments. (Resp., PageID 207–08.)

    a. **Nature of the Negotiations**

Laltitude suggests that there was no meeting of the minds and that the Settlement

Agreement is not binding on the Parties because it was communicated through counsel rather than directly through the Parties. Under Ohio law, "'[i]t is well-recognized that a party may be bound by the conduct of his or her attorney in reaching a settlement.'" *Bromley v. Seme*, 3 N.E.3d 1254, 1258 (Ohio Ct. App. 2013) (quoting *Saylor v. Wilde*, No. 2006–P–0114, 2007 WL 2579396, at *2 (Ohio Ct. App. 2007)). Even so, "an attorney who is without specific authorization has no implied power by virtue of his general retainer to compromise and settle his client's claim or cause of action." *Morr v. Crouch*, 249 N.E.2d 780, 783 (Ohio 1969). Regardless of whether the Parties' attorneys were specifically authorized to negotiate the settlement on the Parties behalf, this is not a situation where the attorneys negotiated the settlement themselves. Rather, undisputed facts in the record demonstrate that the Parties themselves, communicating through their respective counsel, engaged in an offer and acceptance of the Settlement Agreement.

Laltitude does not dispute the basic facts as explained by Dreambuilder regarding the course of negotiations between the parties up through June 16, 2023. (*See* Resp., PageID 205–08.) Counsel for Laltitude represented that it was acting on behalf of Laltitude when, on June 12, counsel emailed an earlier version of the Settlement Agreement as a settlement offer to counsel for Dreambuilder, stating that it was proposed "according to the most recent discussions conducted between our clients." (ECF No. 32-1, PageID 263; *see* Mot., PageID 151; Resp., PageID 206.) In response, counsel for Dreambuilder communicated a proposed edit to one of the provisions and asked "[c]an you please find out if the following language will be acceptable to your client?" (ECF No. 32-1, PageID 262.) Counsel for Laltitude responded on June 16 with an updated version of the Settlement Agreement with a related edit as "the only change." (*Id.*, PageID 261–62.)

The June 16 email and proposed Settlement Agreement from counsel for Laltitude to counsel for Dreambuilder constituted a settlement offer from Laltitude itself, not from counsel for

8

Laltitude. (Mot., PageID 151; Resp., PageID 206; ECF No. 32-1, PageID 261.) Counsel for Dreambuilder's email response on June 21 that "[t]he proposed revision was acceptable to Dreambuilder Toy" constituted Dreambuilder's direct acceptance of Laltitude's offer. (Mot., PageID 151; ECF 32-1, PageID 261; Resp., PageID 206 (acknowledging that Laltitude "received the version of the settlement agreement signed by Kai Liu" on June 21).)

Additionally, Mr. Wang declares that the Parties engaged in settlement talks "with the assistance of our respective counsels," and Mr. Liu declares that the settlement agreements conveyed over email "reflect[ed] the terms agreed upon between myself and Mr. Wang." (Wang Decl., ¶ 4; Liu Decl., ¶ 6.) At no point did Laltitude indicate that an additional approval from Mr. Wang or another representative of Laltitude was needed for an official offer to be made or for the Settlement Agreement to be effective. Accordingly, the unrefuted evidence in the record shows that the email exchanges between counsel for Laltitude and counsel for Dreambuilder reflected the negotiations and the will of their clients, including Laltitude's settlement offer on June 16 and Dreambuilder's acceptance on June 21. There was a meeting of the minds on the essential terms of the Settlement Agreement, as reflected by the written terms proposed by Laltitude and accepted by Dreambuilder without modification.

b. **Additional Discussions**

Without citing to any federal or state case law to support its position, Laltitude argues that the June 21 Settlement Agreement is not binding because Laltitude's Vice President, Mr. Wang, held discussions with Mr. Liu between June 16 and June 21. (Resp., PageID 206–08.) But even if those discussions occurred, which Mr. Liu denies, they do not change the fact an agreement was reached between the Parties when, on June 21, Dreambuilder accepted the offer that Laltitude proposed on June 16. (Liu Decl., ¶ 8); *see Rayco Mfg., Inc. v. Murphy, Rogers, Sloss & Gambel*,

9

142 N.E.3d 1267, 1287 (Ohio Ct. App. 2019) ("Once a settlement offer has been accepted, the settlement agreement is mutually binding; the settlement agreement cannot be set aside simply because one of the parties later changes its mind.").

Laltitude argues that Mr. Wang "did not consent" to the June 16 version of the Settlement Agreement "due to subsequent amendments agreed upon with Kai Liu." (Resp., PageID 208.) But Laltitude does not argue that the June 16 offer was ever revoked. And even if it did make that argument, the only evidence it offers in support of that theory is Mr. Wang's own declaration. In the declaration, he does not declare what date the amendments were agreed upon, and he states that the alleged amendments were not communicated to the attorneys until June 25, four days after Dreambuilder accepted Laltitude's offer. (Wang Decl., ¶¶ 6–9.) Laltitude provides no other evidence to support its argument.

Furthermore, the Settlement Agreement includes provisions stating, "This Settlement Agreement contains the entire understanding and agreement by and between the PARTIES [defined as Laltitude and Dreambuilder]," and "This Agreement has been reached through negotiations between, and has been jointly drafted by, the PARTIES." (Settlement Agreement, PageID 168.) The Parties thus indicated that the Settlement Agreement represents their entire agreement, and evidence that the Parties contemporaneously agreed to different terms is barred by the parol evidence rule. *Galmish v. Cicchini*, 734 N.E.2d 782, 788 (2000) ("[A]bsent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.")

Accordingly, it would be unjust to Dreambuilder to allow Laltitude to back out of the agreement negotiated by the Parties despite their mutual assent to the terms of the Settlement

Agreement. *See PNC Mtge. v. Guenther*, 2013 WL 3776415, at * 3 (Ohio Ct. App. July 12, 2013) (affirming a trial court decision enforcing a contract based in part on the reasoning that "[i]t would be unjust to [plaintiff] to allow [defendants] to circumvent the settlement agreement after [plaintiff] relied upon the representations that [defendants' counsel] had the authority to enter into the agreement.")

### c. Signature Argument

That Mr. Wang did not sign and return an executed copy of the Settlement Agreement to Dreambuilder does not change the fact that an agreement was reached. A signed and executed written agreement is not required to prove the existence of a contract "in the absence of a positive agreement that it should not be binding until so reduced to writing and formally executed." *Chavrat v. Oasis Mtge.*, No. 02AP-1090, 2003 WL 21291046, at *13 (Ohio Ct. App. 2003) (citation omitted); *see PNC Mortg.*, 2013 WL 3776415, at *4 ("It is only 'where the parties intend that there be no contract until the agreement is reduced to writing and signed, or that the contract is to be reduced to writing and signed before the agreement is finally consummated' that 'no contract exists when the written agreement is neither signed nor approved by one of the parties.'" (quoting *Union Sav. Bank v. White Fam. Cos., Inc.*, 916 N.E.2d 816, 819 (Ohio Ct. App. 2009))). Email correspondence between counsel for the parties reflecting "a definite offer and acceptance, bargained for consideration, and the parties' clear understanding of the settlement terms" forms a binding and effective contract even without the signature and execution of the agreement by both parties. *Turoczy Bonding Co. v. Mitchell*, 118 N.E.3d 439, 445 (Ohio Ct. App. 2018). In short, the unrefuted record shows that no signature was needed to create an enforceable contract.

### d. Conclusion

Last, the Court rejects Laltitude's argument that the Settlement Agreement is

11

unenforceable due to Dreambuilder's "bad faith conduct" in reporting to the mediator that the case was settled. (Resp., PageID 208.) Laltitude does not dispute Dreambuilder's assertion that Dreambuilder emailed Laltitude and the mediator on June 21 to report the case as settled and that mediation was unnecessary because an agreement had been reached. (Mot., PageID 151; Liu Decl., ¶ 10.) Laltitude also does not dispute that the mediator stated on June 22 that he would report to the Court that the case was settled unless the Parties objected, nor does it dispute that neither party objected. (Mot., PageID 151; Liu Decl., ¶ 11; Mediator's Report, ECF No. 21.) Given this unrefuted evidence in the record and the determination that the Parties reached a valid settlement agreement, Dreambuilder did not act in bad faith by informing the mediator that the Parties had settled.

Ultimately, counsel for Laltitude and counsel for Dreambuilder acted as facilitators and intermediaries between the Parties, rather than negotiators acting with special authority to independently settle this dispute. Based on the unrefuted evidence in the record, the Settlement Agreement reached between the Parties on June 21 satisfies the offer, acceptance, consideration, meeting of the minds, and mutual assent elements of a contract under Ohio law. For the reasons stated above, the Court finds that there is no genuine issue of material fact regarding the existence of an enforceable settlement agreement. Accordingly, an evidentiary hearing is unnecessary to determine the existence of an enforceable settlement agreement.

**III.     Breach of the Settlement Agreement**

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976). Because there is no genuine issue of a material fact regarding the existence of an enforceable settlement agreement, the Court has the authority to enforce it.

Dreambuilder asserts that Laltitude breached the Settlement Agreement by expressly repudiating the Settlement Agreement, failing to participate in a joint motion to request the entry of a permanent injunction, and failing to file a stipulation of dismissal. (Mot., PageID 155–56.) The Settlement Agreement includes Laltitude's commitment to participate in a joint motion to the Court requesting a permanent injunction and to file a stipulation of dismissal after the Court issues injunction. (Settlement Agreement, PageID 167.)

Laltitude now claims that it has complied with all the terms of the Settlement Agreement because it signed the agreement in January 2025, filed a motion to dismiss with prejudice, and indicated that it will agree to a joint motion for a permanent injunction. (*See* ECF No. 37.) But Laltitude did not dispute in its Response to Dreambuilder's Motion that it has failed to comply with those terms. (*See* Resp.) The Settlement Agreement required Laltitude to participate in and file a Joint Motion for a permanent injunction "within ten (10) days from the Effective Date of this Agreement," which the Court has determined is June 21, 2023. (Settlement Agreement, PageID 167.) Laltitude disavowed the Settlement Agreement and did not participate in a Joint Motion by that deadline. Accordingly, the Court finds that there is no genuine issue of material fact that Laltitude breached the Settlement Agreement.

IV. **Dreambuilder's Motion for Sanctions**

Generally, Ohio law follows the American Rule that each party is required to pay its own attorney's fees in most circumstances. Even so, "Ohio law allows a court to award attorney's fees as compensatory damages when a party's breach of a settlement agreement makes litigation necessary" without the need to prove an independent exception to the American Rule. *Rohrer Corp. v. Dane Elec. Corp. USA*, 482 Fed. App'x 113, 117 (6th Cir. 2012); *see Raymond J. Schaefer, Inc. v. Pytlik*, No. OT-09-026, 2010 WL 3820552, at \*6 (Ohio Ct. App. 2010) (permitting

an award of attorney's fees as compensatory damages "because those fees were incurred as a direct result of appellants' breach of the settlement agreement") An award of attorney's fees as compensatory damages in this context is at the discretion of the trial court. *See Rohrer* at 117; *Raymond* at *6.

Dreambuilder requests an award of attorney's fees and costs arising from Laltitude's breach of the Settlement Agreement. (Mot., PageID 158.) It argues that an award of fees is appropriate because (1) the breach led to additional efforts to negotiate a resolution, (2) Dreambuilder needed to file this Motion to enforce the Settlement Agreement, and (3) Laltitude created additional costs by filing a separate lawsuit in state court in California seeking declaratory judgment over this matter. (*Id.*; Reply, PageID 258.) In its defense, Laltitude argues that "[t]he disputes over the settlement terms were legitimate and based on genuine misunderstandings and subsequent negotiations between the principals of both parties." (Resp., PageID 209.)

The Court finds that an award of compensatory damages in the form of attorney's fees and costs is appropriate due to Laltitude's breach of the enforceable Settlement Agreement reached between the Parties. There is no genuine issue of material fact that a settlement agreement was reached, and Laltitude's efforts to disclaim that agreement caused Dreambuilder to incur litigation costs that were otherwise unnecessary.

## CONCLUSION

The Court finds that there is no genuine issue of material fact regarding the existence of an enforcement contract between the Parties. The Settlement Agreement reached on June 21 (ECF No. 26-3) is valid and enforceable as a matter of law, and Laltitude indisputably breached it. Dreambuilder is entitled to an award of compensatory damages in the form of attorney's fees and costs incurred as a direct result of Laltitude's breach of the Settlement Agreement.

Accordingly, the Court **GRANTS** Dreambuilder's Motion to Enforce Settlement Agreement and for Sanctions. (ECF No. 26.) Additionally, the Court **DENIES** Laltitude's Motion to Dismiss With Prejudice. (ECF No. 37.) To resolve the case in accordance with this Opinion and Order, the Parties are **ORDERED** to confer and provide notice to the Court **within 14 days of this Opinion and Order** regarding whether they intend to file a joint motion for an injunction or whether an injunction is no longer necessary. Only after such notice will the Court entertain a motion to dismiss in accordance with the Settlement Agreement. Additionally, Dreambuilder is **ORDERED** to file any motion for attorney's fees and costs **within 21 days of this Opinion and Order**.

This case remains open.

**IT IS SO ORDERED.**

| | |
|---|---|
| **3/4/2025** | **s/Edmund A. Sargus, Jr.** |
| **DATE** | **EDMUND A. SARGUS, JR.** |
| | **UNITED STATES DISTRICT JUDGE** |