UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LALTITUDE, LLC,

      Plaintiff,

v.

DREAMBUILDER TOY, LLC, *et al.*,

      Defendants.

Case No. 2:22-cv-2911
Judge Edmund A. Sargus, Jr.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

The matter before the Court is Defendant Dreambuilder Toy, LLC's Motion for Attorney's Fees and Costs. (ECF No. 44.) Dreambuilder asks the Court to award it $58,005.00 in attorneys' fees and $1,145.56 in costs. (*Id.*) Plaintiff Laltitude, LLC filed an opposition (ECF No. 47) and Dreambuilder filed a reply (ECF No. 48). For the reasons stated below, the Court **GRANTS in part** and **DENIES in part** Dreambuilder's Motion for Attorneys' Fees and Costs. (ECF No 44.)

## BACKGROUND

In July 2022, Laltitude sued Dreambuilder alleging that Dreambuilder infringed its patents for magnetic bricks used as building tiles in toy sets. (ECF No. 1, ¶¶ 1–2.) The parties engaged in settlement negotiations and reached a settlement in June 2023. (ECF Nos. 21, 22.) Dreambuilder signed a written Settlement Agreement, but Laltitude, wanting to continue discussions, did not. (ECF No. 26-1, PageID 151; ECF No. 27, PageID 206.) The Settlement Agreement required the parties to file a joint motion to the Court for a permanent injunction. (ECF No. 26-3, PageID 167.) Laltitude refused to file the motion, asserting that it did not agree to the terms of the Settlement Agreement. (ECF No. 26-1, PageID 156.) In late December 2023,

Dreambuilder filed a motion for leave to file the Settlement Agreement under seal, in which it notified Laltitude and the Court that it intended to file a Motion to Enforce the Settlement Agreement. (ECF No. 24, PageID 143.)

In March 2024, Laltitude filed another lawsuit against Dreambuilder—in California state court—seeking declaratory judgment regarding the validity and enforceability of the Settlement Agreement. (ECF No. 26-1, PageID 151; ECF No. 26-4, PageID 199.)

In May 2024, Dreambuilder filed a Motion to Enforce Settlement Agreement and for Sanctions in this Court. (ECF No. 26.) In addition to asking the Court to enforce the Settlement Agreement, Dreambuilder requested sanctions in the form of attorneys' fees for litigation costs it incurred due to Laltitude's refusal to comply with the Settlement Agreement. (ECF No. 26-1, PageID 157–58.)

In November 2024, the California court dismissed the California case by granting Dreambuilder's motion to dismiss. (ECF No. 48, PageID 390.) After its loss in California, Laltitude signed the Settlement Agreement. (ECF No. 39, PageID 317.) It also filed a Motion to Dismiss the instant case under Federal Rule of Civil Procedure 41(a)(2) (ECF No. 37), which Dreambuilder opposed (ECF No. 38).

In March 2025, the Court issued an Opinion and Order granting Dreambuilder's Motion to Enforce Settlement Agreement and for Sanctions (ECF No. 26) and denying Laltitude's Motion to Dismiss (ECF No. 37). (March 2025 Order, ECF No. 40.) The Court found that an enforceable Settlement Agreement was created on June 21, 2023, and that Laltitude breached the agreement by attempting to disavow it. (March 2025 Order, PageID 332.) It denied Laltitude's motion to dismiss because granting it would have allowed Laltitude to defeat Dreambuilder's request for attorneys' fees. (*Id.* PageID 324.) Finally, it concluded that Dreambuilder is entitled

2

to compensatory damages in the form of attorneys' fees and costs "incurred as a direct result of Laltitude's breach of the Settlement Agreement" and ordered Dreambuilder to file a motion for attorneys' fees. (*Id.* PageID 332–33.) Subsequently, Dreambuilder filed the instant Motion for Attorney's Fees and Costs (ECF No. 44) with an accompanying Memorandum in Support. (Mot., ECF No. 44-1.)

## ANALYSIS

Dreambuilder requests $58,005.00 in attorneys' fees and $1,145.56 in costs, for a total of $59,150.56. (Mot., PageID 341.) This amount covers Dreambuilder's fees and costs incurred in resolving the instant case and the California case, starting on the date Laltitude began to disavow the Settlement Agreement. (*Id.* PageID 342.) Laltitude's response in opposition can be distilled into two possible arguments: (1) Dreambuilder's calculation is unreasonable because it exceeds the scope of the Court's March 2025 Order and (2) Dreambuilder did not mitigate its damages. (Opp., ECF No. 47, PageID 378–85.) Additionally, Laltitude attempts to once again argue the enforceability of the Settlement Agreement (*Id.* PageID 373–74), which the Court addresses first.

### I. Enforceability of the Settlement Agreement

Laltitude attempts to relitigate the issue of enforceability of the Settlement Agreement. It argues that one of Dreambuilder's attorney's time entries, which Dreambuilder submitted for calculating attorneys' fees, proves that the settlement negotiations were still ongoing after June 21, 2023. (Opp., PageID 373–74.) It asserts that the Court can vacate its March 2025 Order because of this "newly discovered evidence" that it alleges Dreambuilder intentionally withheld. (*Id.*)

The time entry, dated July 7, 2023, states:

> Reviewed proposed settlement agreement changes and opposing counsel correspondence regarding the same. Corresponded with K. Liu regarding

3

> developments and recommendation. Drafted email to opposing counsel declining to consider updated settlement proposal and intent to rely on agreed terms.

(ECF No. 44-3. PageID 350.) The last sentence in the time entry contradicts Laltitude's assertion that the parties were still negotiating the terms of the Settlement Agreement. Instead, it fits squarely within the Court's conclusion that an enforceable agreement was finalized on June 21, 2023. Accordingly, the Court sees no reason to reconsider the issue of the Settlement Agreement's validity and enforceability.

## II. Laltitude's Arguments in Opposition of Attorneys' Fees

Laltitude makes a number of arguments against attorneys' fees that can be reduced to two main points. First, that Dreambuilder's inclusion of the California case exceeds the scope of the Court's March 2025 Order. (Opp., PageID 378, 380–83, 384–85.) Second, it argues that Dreambuilder did not mitigate its damages. (*Id.* PageID 379–80.) The Court addresses these arguments before turning to a lodestar analysis of Dreambuilder's fees calculation.

### A. Scope of the Court's Order

Laltitude argues that fees incurred in the California case are outside the scope of the March 2025 Order. (Opp., PageID 378, 380–83, 384–85.) It asserts that any time entries related to the California matter should be excluded from the award. (*Id.*, PageID 383.) Dreambuilder responds that the California case is a direct result of Laltitude's breach of the Settlement Agreement and the two cases are "inextricably intertwined," allowing it to recover fees in both cases. (ECF No. 48, PageID 389.)

The Court's March 2025 Order stated that there was "no genuine issue of material fact that a settlement agreement was reached and Laltitude's efforts to disclaim that agreement caused Dreambuilder to incur litigation costs that were otherwise unnecessary." (March 2025 Order, ECF No. 40, PageID 332.) It concluded that Dreambuilder is entitled to its attorneys' fees

4

and costs "incurred as a direct result of Laltitude's breach of the Settlement Agreement." (*Id.*)

A party may recover its attorneys' fees incurred in a related case if the work product is utilized in both cases and the issues in both cases are "inextricably linked." *Bender v. Newell Window Furnishings, Inc.*, 560 F. App'x 469, 474 (6th Cir. 2014) (quoting *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993)). In *Bender*, an employer brought a preemptive lawsuit seeking declaratory judgment to avoid litigation with its retirees in an Employee Retirement Income Security Act ("ERISA") matter. *Id.* at 470–71. That case was dismissed for improper forum shopping. *Id.* at 471. The retirees then brought their ERISA claim in the proper forum, where they prevailed and were awarded their attorney's fees in both lawsuits. *Id.* at 471–73. The Sixth Circuit upheld the award explaining that the two cases had identical issues and that it would be unjust to require the retirees to bear the costs of defending themselves in the related case because the related case was brought "in an improper forum to gain an advantage" against them and they had to resolve the first case in order to proceed with their ERISA claim. *Id. See also Keyes Law Firm LLC v. Napoli*, 120 F.4th 139, 143–44 (4th Cir. 2024) (upholding sanctions in the form of attorneys' fees where a party filed two state court actions in an attempt to impede pending litigation in federal court).

Here, like in *Bender*, the issues in the two cases are not just related or inextricably linked, they are identical. Laltitude asked the California court to determine the enforceability of the Settlement Agreement, which was ultimately decided by this Court. Further, it is apparent that Laltitude initiated the California case to gain an advantage in the instant case. Laltitude knew that Dreambuilder was going to ask this Court to enforce the Settlement Agreement, because of Dreambuilder's filing saying so, and attempted to impede the request by asking a different court to find the Settlement Agreement unenforceable. (ECF No. 26-4, PageID 198–99).

5

Laltitude has asserted that it had a right to dispute the validity of the Settlement Agreement in another forum because the Settlement Agreement did not contain a governing-law provision. (ECF No. 39, PageID 316.) Even so, Dreambuilder incurred costs in defending itself in the California case that it should not have to bear. Especially because the issue of the enforceability of the Settlement Agreement could have, and ultimately was, resolved by this Court. This lawsuit was ongoing when Laltitude filed the state court action.

Accordingly, the Court concludes that Dreambuilder is entitled to its attorneys' fees and costs in enforcing the Settlement Agreement incurred in this Court and the California state court.

### B. Mitigation of Damages

Laltitude argues that Dreambuilder had a duty to mitigate its damages under Ohio breach-of-contract law. (Opp., PageID 377.) It asserts that Dreambuilder failed to mitigate when it "declined to participate in a mediation, opting instead for the initiation of additional litigation." (*Id.* PageID 379–80.)

Other than conclusory assertions, Laltitude does not proffer any facts or case law to support its argument that engaging in mediation is a form of damages mitigation. To the Court's knowledge, there is no duty on a party in a lawsuit to participate in alternative dispute resolution to mitigate its attorneys' fees. In certain situations, however, courts have considered whether failure to avoid unnecessary litigation should result in a reduction of awarded attorneys' fees. *See Danvers v. Danvers*, 959 F.2d 601, 605–06 (6th Cir. 1992) (finding that a party should not receive full attorneys' fees when attorney proceeded with discovery instead of filing a motion to dismiss meritless claims); *United States ex rel. Jacobs v. Lambda Research, Inc.*, No. 1:10-cv-536, 2015 WL 11120335, at *3–5 (S.D. Ohio May 20, 2015) (Bowman, J.) (questioning whether a duty to mitigate attorneys' fees exists and concluding that a party was entitled to full attorneys'

6

fees because it "tried valiantly to quickly resolve [the] litigation" and it was the non-movant's conduct that prolonged litigation).

There is no evidence that Dreambuilder engaged in unnecessary litigation in resolving its dispute with Laltitude. The record reflects that the Parties were scheduled to participate in mediation in June 2023, but it was cancelled because they reached a Settlement Agreement. (March 2025 Order, PageID 321; ECF No. 21.) No further mediation was ever contemplated by the Parties. Additionally, there was no reason for Dreambuilder, who has always maintained that a valid Settlement Agreement was created on June 21, 2023, to mediate an issue that it believed to be settled. Laltitude prolonged the dispute by disavowing the Settlement Agreement and initiating a second lawsuit in California, and Dreambuilder took steps to resolve the dispute efficiently by asking this Court to enforce the Settlement Agreement and obtaining dismissal in the California case.

Accordingly, the Court finds that Dreambuilder did not fail to mitigate its attorneys' fees.

### III. Calculation Attorneys' Fees and Costs

Turning to the attorneys' fees calculation, the Court calculates an award of attorneys' fees by using the lodestar amount, which is "the number of hours reasonably expended on the litigation [multiplied] by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 551 (6th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Because of its objectivity, "there is a 'strong presumption' that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).

The party seeking attorneys' fees has the initial burden to "submit evidence of the hours worked and the rates sought." *Ne. Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). The documentation offered in support must be "of sufficient detail and probative

7

value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553 (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)).

Dreambuilder requests attorneys' fees for the following hours at the following rates:

| Last Name | Year Admitted | Hourly Rate | Hours Billed | Total |
|---|---|---|---|---|
| Schonauer | 2010 | $376.89 | 70.8 | $26,684.00 |
| Rodman | 2001 | $701.26 | 17.9 | $12,552.50 |
| Wymore | 1986 | $691.08 | 16.7 | $11,541.00 |
| Illig | N/A | $245 | 15.7 | $3,846.50 |
| Smith | 2020 | $330 | 9.9 | $3,267 |
| Scharf | N/A | $360 | 0.2 | $72 |
| Miller | N/A | $210 | 0.2 | $42 |
| **Total** | | | 140 | $58,005.00 |

(Schonauer Aff., ECF No. 44-2, PageID 347.) In support of its request, Dreambuilder submitted invoices that contain detailed time entries for the hours and rates billed by its attorneys and paralegals. (ECF No. 44-3, PageID 350–69.) It also submitted a declaration from attorney Matthew J. Schonauer, who was responsible for issuing the invoices to Dreambuilder. (Schonauer Aff., PageID 346.) With this calculation, the Court proceeds to a lodestar analysis of Dreambuilder's attorneys' hourly rates and hours billed.

A. **Hourly Rate**

A reasonable hourly rate is determined based on the "prevailing market rate in the relevant community." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

In support of its attorneys' rates, Dreambuilder cites to the American Intellectual Property Law Association's ("AIPLA") Report of the Economic Survey, which provides figures for attorneys' billing rates in intellectual property disputes. (Schonauer, Aff., PageID 348–49.)

Generally, this Court relies on the Ohio State Bar Association's Survey on Economics of Law Practice to determine the reasonableness of attorneys' hourly rates. *See Equity Res., Inc. v. T2 Fin., LLC*, No. 2:21-cv-5922, 2025 WL 699462, at *4 (S.D. Ohio Mar. 5, 2025). But given the multijurisdictional nature of the parties' dispute, and the specialized nature of intellectual property law, the Court finds it appropriate to consider the AIPLA's figures for intellectual property attorneys. *See Swapalease, Inc. v. Sublease Exchange.com, Inc.*, No. 1:07-CV-45, 2009 WL 1119591, at *4–5 (S.D. Ohio 2009) (Beckwith, J.) (relying on AIPLA report); *Eagle Crusher Co., Inc. v. U.S. Equip. Sales & Rentals*, No. 2:25-cv-42, 2025 WL 2267729, at *5 (S.D. Ohio Aug. 8, 2025) (Morrison, J.) (relying on both the AIPLA report and the Ohio State Bar Association's survey).

Laltitude protests only the hourly rates of the attorneys who billed in the California case. (Opp., PageID 382.) As an initial matter, the Court notes that it was Laltitude that chose the forum when it initiated the parallel case in California, a state generally known for its high litigation costs. Dreambuilder could not defend itself in California without an attorney licensed to practice in California, who in this case was Ms. Wymore. (Schonauer, Aff., PageID 348.) *See* Cal. Bus. & Prof. Code § 6125 ("No person shall practice law in California unless the person is an active licensee of the State Bar.").

Proceeding to the billing-rate analysis, the Court finds that all Dreambuilder's legal professionals' fees are reasonable except for one. According to the AIPLA, the average hourly rates for intellectual property attorneys are the following:

- 10–14 years of experience - $527 per hour
- 15–24 years of experience - $545 per hour
- 25–34 years of experience - $610 per hour
- 35+ years of experience - $694 per hour

2023 AIPLA Report of the Economic Survey, page I-34. Thus, Mr. Schonauer's and Ms.

9

Wymore's rates are reasonable. Ms. Rodman's hourly rate exceeds the AIPLA average for an attorney with her years of experience. Ms. Rodman had 23–24 years of experience while working on this matter. Because she is on the cusp of two ranges, the Court reduces Ms. Rodman's rate to a rate of $575 per hour. *See Eagle Crusher Co.*, 2025 WL 2267729 at *5 (finding a rate of $600 per hour to be an appropriate rate for an intellectual property attorney with about 30 years of experience).

Laltitude does not challenge the paralegals' hourly rates. Nevertheless, the Court finds them to be reasonable. *See Epic Fiber Underground Constr., LLC v. Utils. Servs. Radius, LLC*, No. 1:24-CV-720, 2025 WL 2842421, at *6 (S.D. Ohio June 11, 2025) (Litkovitz, M.J.) (concluding that a paralegal billing rate of $250 per hour is reasonable).

Given the reduction to Ms. Rodman's hourly rate, the attorneys' fees award is modified as follows:

| Name | Year Admitted | Hourly Rate | Hours Billed | Total |
|---|---|---|---|---|
| Schonauer | 2010 | $376.89 | 70.8 | $26,684.00 |
| Rodman | 2001 | ~~$701.26~~ $575 | 17.9 | ~~$12,552.50~~ $10,292.50 |
| Wymore | 1986 | $691.08 | 16.7 | $11,541.00 |
| Illig | N/A | $245 | 15.7 | $3,846.50 |
| Smith | 2020 | $330 | 9.9 | $3,267 |
| Scharf | N/A | $360 | 0.2 | $72 |
| Miller | N/A | $210 | 0.2 | $42 |
| **Total** | | | 140 | ~~$58,005.00~~ $55,745 |

### B. Hours Billed

In reviewing counsel's hours billed in a motion for attorneys' fees, the district court's goal "is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The standard for determining whether the hours expended are reasonable is "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of

10

success at the point in time when the work was performed." *Woolridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by*, *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001).

Dreambuilder's legal counsel billed 140 hours after Laltitude disavowed the Settlement Agreement. (Schonauer Aff., PageID 347.) This includes time for communicating with Laltitude about the Settlement Agreement, drafting multiple briefs seeking enforcement of the Settlement Agreement, and obtaining dismissal of the California case. (ECF No. 44-3, PageID 350–69.) Upon review of the time entries submitted by Dreambuilder's counsel, the Court finds 140 hours reasonable to resolve the instant litigation and obtain dismissal in the California case. The Court finds no evidence of duplicative, wasteful, or excessive billing in Dreambuilder's legal professionals' time entries.

### C. Costs

Dreambuilder requests $1,145.56 in costs to cover $28.10 in document access costs, $13.77 in research costs, and $1,103.69 in filing costs in the California case. (Mot., PageID 344.) Laltitude opposes the inclusion of costs from the California case. (Opp., PageID 384–85.) As discussed above, Dreambuilder is entitled to its fees and costs incurred in defending itself in the California case. Accordingly, the Court **GRANTS** the requested costs.

### CONCLUSION

For the reasons stated in this Opinion and Order, the Court **GRANTS in part** (ECF No. 44) Defendant's Motion for Attorneys' Fees and Costs. The Court **AWARDS** Dreambuilder $55,745 in attorneys' fees and $1,145.56 in costs, for a total of $56,890.56. The Court notes that this holding is limited to the specific facts of this case, which involve litigation in California and intellectual property issues.

**IT IS SO ORDERED**.

This case remains closed.

| | |
|---|---|
| **1/8/2026** | **s/Edmund A. sargus, Jr.** |
| **DATE** | **EDMUND A. SARGUS, JR.** |
| | **UNITED STATES DISTRICT JUDGE** |

12